UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Midwest Terminals of Toledo
International, Inc.,

Case No. 3:18-cv-2560

          Plaintiff,

v.

MEMORANDUM OPINION
AND ORDER

International Longshoremen's
Association, et al.,

          Defendants.

### I.    INTRODUCTION

Plaintiff Midwest Terminals of Toledo International, Inc., has filed a motion for leave to amend its complaint to add the International Longshoremen's Association, ALF-CIO ("ILA") as a Defendant. (Doc. No. 57). Defendants the International Longshoremen's Division – Great Lakes Council, and the International Longshoremen's Association, Local 1982 (collectively, "Defendants"), filed a brief in opposition, contending Midwest's motion comes too late and would cause unfair prejudice. (Doc. No. 60).

The ILA, which initially was named as a defendant in this litigation before subsequently being dismissed, filed a motion for leave to file a brief in opposition to Midwest's motion, presenting its own delay and prejudice arguments and also arguing the proposed amendment would be futile. (Doc. No. 59). The ILA also submitted its proposed brief. (Doc. No. 59-1). Midwest does not

oppose the ILA's motion for leave but argues its proposed amendments have merit, would not cause prejudice, and were not unduly delayed. (Doc. No. 61).

For the reasons stated below, I grant the ILA's motion for leave and grant Midwest's motion for leave to amend.

## II. BACKGROUND

Midwest initiated this litigation on November 6, 2018, alleging that, between 2017 and October 2018, the Defendants and the ILA unlawfully conspired with the professional ship pilots ("Pilots") of the Lakes Pilot Association, Inc. ("LPA"), to prevent ships owned or operated by international shipping companies from navigating to or from the Toledo Port operated by Midwest. (Doc. No. 1). Professional ship pilots, including the Pilots associated with the LPA, are authorized by federal law to operate in local waterways and apply detailed knowledge of local conditions to navigate international, ocean-going vessels on Lake Erie and its connected river systems. (*Id.* at 8); *see also* 46 C.F.R. Part 401 *et seq*. The Pilots are independent contractors who perform work for the LPA. (Doc. No. 1 at 8).

Midwest alleges, among other things, that the Defendants and the ILA improperly set up a picket line designed to provide an excuse for the Pilots to refuse to board and navigate the ships, and that the Defendants and the ILA improperly conspired with the Pilots to ensure the Pilots went along with the picket. (Doc. No. 1 at 8-16). At the time, ILA Local 1982 had been placed in a trusteeship by ILA President Harrold Daggett; the trusteeship order removed local officers from their positions and located "control of the books, records, property, assets, funds[,] and affairs" under the sole authority of two trustees – William Yockey, International Vice President of the ILA, and John Baker, Jr., International Vice President of the ILA and President of the ILA Great Lakes. (*Id.* at 5).

Midwest asserts Defendants and the ILA violated the prohibitions in the Labor Management Relations Act against agreements to refrain from handling certain products and against secondary picketing.  (*Id.* at 17-20).

On November 29, 2018, Midwest filed its First Amended Complaint, which included the same defendants and claims but added further factual allegations.  (Doc. No. 10).  The following day, Midwest dismissed its claims against the ILA without prejudice pursuant to Rule 41(a)(1). (Doc. No. 11).

The parties then proceeded to engage in discovery.  I initially set a deadline of December 31, 2019, for the parties to amend their pleadings or add additional parties, and a fact discovery deadline of August 30, 2020.  (Doc. No. 19).  The parties encountered delays during discovery.  Some of these delays arose directly and indirectly from the Covid-19 pandemic.

Other delays arose from difficulties related to compliance with third-party subpoenas served on the Pilots and the LPA.  (*See* Doc. No. 54).  As a result, I extended the pleading-amendment deadline, (Doc. No. 45), and eventually vacated it while Midwest awaited responses to its subpoenas. (Doc. No. 47).  Midwest later requested additional time, until June 30, 2020, to file a motion to add parties, and both parties agreed the discovery deadline should be extended until December 31, 2020. (Doc. No. 55).  A few months later, in response to the parties' request, I again extended the discovery deadline, this time until January 31, 2021.  (Doc. No. 56).

Midwest ultimately filed its motion for leave to amend on November 5, 2020.  Midwest seeks to add the ILA "as a defendant because any right to relief is asserted against all defendants jointly and severally and Midwest's cause of action against all defendants arises out of the same series of transactions or occurrences and all questions of law and fact are common to all defendants."  (Doc. No. 57 at 2).  Midwest asserts that, because "Local 1982 has little to no funds," it has reason to believe "the ILA has orchestrated, supported[,] and provided funds to Local 1982

3

thereby allowing Local 1982 to carry out the unlawful activity against Midwest which resulted in the filing of the cause of action herein." (*Id.*).

### III. STANDARD

A plaintiff may join multiple parties as defendants in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2). Courts within the Sixth Circuit generally consider motions to add parties under both Rule 20 and "the general principles governing amendment under Rule 15(a)." *Dottore v. Nat'l Staffing Servs., LLC*, No. 3:06-CV-01942, 2007 WL 2114668, at *3 (N.D. Ohio July 20, 2007).

Rule 15 provides "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. Pro. 15(a)(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989). "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973).

### IV. ANALYSIS

The ILA and Defendants argue I should deny Midwest's motion to add the ILA as a defendant because Midwest failed to exercise diligence in bring its motion and because they would be prejudiced if the motion is granted.

4

Nearly two years passed between the date on which Midwest voluntarily dismissed the ILA as a party and the date on which Midwest sought to leave to amend. Midwest offers no explanation for its delay in seeking to again add the ILA as a party to this litigation. It points to the extensions of the discovery deadline and my order vacating the deadline for adding additional parties, however, and implies it did not seek leave earlier because it did not need to. (Doc. No. 61 at 6-7).

While courts in other circuits require the movant to provide some explanation for a delay, *see, e.g., Reisner v. Gen. Motors Corp.*, 511 F. Supp. 1167, 1172 (S.D.N.Y. 1981), *aff'd* 671 F.2d 91 (2d Cir. 1982), the same is not true of the Sixth Circuit.[1] Here, delay alone is not enough permit a court to deny a motion to amend, regardless of how long a party has delayed. *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 888 (6th Cir. 1990); *see also Dottore*, 2007 WL 2114668, at *4 ("While NSS could have brought its current motion earlier, delay alone – regardless of length – is an insufficient basis for a court to deny an otherwise appropriate motion for leave to amend." (citing *Wallace Hardware Co., Inc. v. Abrams,* 223 F.3d 382, 409 (6th Cir.2000))). In order to prevent Midwest from amending its complaint because of undue delay, Defendants and the ILA must show prejudice. *See Dana*, 900 F.2d at 888 (A party opposing a motion to amend must offer "at least some significant showing of prejudice.") (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986) (per curiam)).

Defendants assert "[w]here '[s]ubstantial discovery has already occurred' in a case, such as this one, that has been pending for over two years, permitting the addition of new defendants would require the named defendants 'to expend significant additional resources to conduct discovery and

---

[1] The Sixth Circuit's decision in *Kelso v. City of Toledo*, 77 F. App'x 826 (6th Cir. 2003), which both Defendants and the ILA cite in their opposition briefs, is not to the contrary. (*See* Doc. No. 60 at 3-4; Doc. No. 59-1 at 5). In *Kelso*, the plaintiffs sought to amend their complaint after the district court ruled against them on summary judgment. *Kelso*, 77 F. App'x at 834. The prejudice to the named and proposed defendants in that case in allowing the case to start anew was evident, even if left unsaid.

5

prepare a different case for trial, and would substantially prolong the resolution of this dispute, all of which constitutes undue prejudice to Defendants caused solely by Plaintiff's unexplained and undue delay.'" (Doc. No. 60 at 7 (quoting *J.H. by Harris v. Williamson County*, No. 3:14-2356, 2017 WL 11476335, *4, fn. 10 (M.D. Ten. Feb. 24, 2017))).

It is unclear how joining the ILA would substantially prolong resolution of the parties' disputes as this case remains in the relatively early stages, despite the passage of two years since Midwest filed suit. The parties have not completed discovery and I have yet to set a briefing schedule for dispositive motions. Moreover, Defendants do not explain how the ILA's reintroduction to this case would force them to prepare a different case for trial, as Midwest represents it "does not seek to add new claims," (Doc. No. 57 at 6), and the First Amended Complaint plainly sets forth Midwest's theory that the ILA directed Defendants' alleged misconduct.

That leaves Defendants' contention that permitting Midwest to add the ILA as a defendant would require Defendants to expend significant additional resources in conducting discovery. Defendants do not elaborate on their assertions that Midwest's proposed amendment would cause them "great prejudice," (Doc. No. 60 at 8), and *J.H.*, which was decided under Rule 16's good-cause standard and not Rule 15(a), provides no further context. *See J.H.*, 2017 WL 11476335, at *4 ("Absent a finding of good cause under Rule 16(b)(4), the Court does not reach the merits of Plaintiff's request for leave to amend his Complaint under Rule 15(a)."). Even if Midwest's undue delay lessens Defendants' burden to show they would be prejudiced by the proposed amendment, Defendants have failed to satisfy that burden.

The ILA offers its "substantial prejudice" arguments – it would be precluded "from meaningfully participating [in discovery] and defending its interests in this lawsuit," it would "be cut off at the knees when it comes to expert discovery," and it cannot be expected to rely solely on Local 1982's discovery efforts because Local 1982 "lacks all the financial resources required to fully

defend itself against Midwest's claims." (Doc. No. 59-1 at 10). The ILA does not demonstrate prejudice either.

As I noted above, discovery still is ongoing, and Midwest already has represented it would not oppose an appropriate and necessary extension of the discovery deadline.[2] (*See* Doc. No. 61 at 6). Moreover, Local 1982's apparent financial issues do not mean that the discovery conducted to date is irredeemable. Defendants have provided and requested written discovery, and none of the parties claim that the other named Defendant – the International Longshoremen's Division – Great Lakes Council – is insolvent or that it was unable to hire an expert witness or to reasonably dispute Midwest's allegations of misconduct. Lastly, Midwest's proposed amendment would not "materially change the substance of the . . . complaint," *Moore*, 790 F.2d at 560, because it would not alter the long-standing allegations about who did what. (*See* Doc. No. 10 at 5-9).

The ILA also opposes Midwest's motion because, it argues, "Midwest now wants a second bite at the apple based on the same vicarious liability theory it previously discarded." (Doc. No. 59-1 at 10). While Midwest's motion appears to be the result of a change in litigation strategy, the Federal Rules of Civil Procedure do not prohibit this type of pivot. *See, e.g., Town of New Windsor v. Tesa Tuck, Inc.*, 919 F. Supp. 662, 676 (S.D.N.Y. 1996) (The fact that plaintiff's proposed amendment "reflects a change in litigation strategy" does not, on its own, constitute a basis to deny a motion for leave to amend.).

Lastly, the ILA asserts Midwest's motion must be denied because it was made in bad faith. (Doc. No. 59-1 at 11-12). The ILA claims Midwest seeks "to prevent the ILA from engaging in meaningful discovery," (*id.* at 11), and has engaged in "brazen attempted gamesmanship." (*Id.* at 12).

---

[2] The ILA's request "that the discovery deadline be extended at least two years if it is added to this lawsuit" in order to "avoid any further undue prejudice" is denied, as they have made no showing at this point that such an extension might be necessary. (Doc. No. 59-1 at 11). The ILA cannot sidestep being added to this litigation by creating prejudice to the existing parties.

7

The ILA's characterization of Midwest's motion does not establish the motion was made in bad faith. The motion did not come as a surprise, as Midwest raised the likelihood of a motion to add parties during telephone status conferences as far back as November 2019. Moreover, neither the federal and local civil rules nor my pattern and practice as a judge will permit Midwest to dictate, on its own, the scope and duration of discovery.

Finally, the ILA argues Midwest's motion must be denied because Midwest fails to adequately allege Yockey acted as an agent of the ILA while serving as Local 1982 trustee or that the ILA itself actively engaged in wrongdoing and, therefore, the proposed amendment would be futile. (Doc. No. 59-1 at 12-13). While courts ordinarily treat an international union as a separate entity which is not vicariously liable for the actions of a local union, *Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212 (1979), this treatment arises from the common occurrence that locally elected representatives are responsible for the day-to-day management of the local union. *See, e.g., Overnite Transp. Co. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 168 F. Supp. 2d 826, 839 (W.D. Tenn. 2001) (citing *Shimman v. Frank,* 625 F.2d 80 (6th Cir.1980), *overruled on other grounds by Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226 (6th Cir.1984)).

That is not the case here, where the ILA had to displace Local 1982's elected officers and appoint trustees to run the local union instead. Midwest has plausibly alleged Local 1982's actions are attributable to the ILA or the result of the ILA's conduct. Plausible allegations are all that the law requires at this stage of the proceedings and, therefore, the ILA has not established that Midwest's proposed amendment would be futile.

## V. CONCLUSION

For the reasons stated above, the motions for leave filed by Midwest, (Doc. No. 57), and by the ILA, (Doc. No. 59), are granted. Midwest shall file its second amended complaint within 14

days of the date of this order. The January 31, 2021 discovery deadline is vacated and will be held in abeyance pending further order of this Court.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge