# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| MIDWEST TERMINALS OF TOLEDO INTERNATIONAL, INC., | ) ) ) |
| Plaintiff, | ) |
| v. | ) ) |
| INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, *et al.*, | ) ) ) |
| Defendants. | ) ) ) ) |

Case No.: 3:18-cv-02560-JJH

## INTERNATIONAL LONGSHOREMEN'S ASSOCIATION'S
## REPLY BRIEF IN SUPPORT OF ITS
## MOTION TO DISMISS

MARRINAN, MAZZOLA & MARDON, P.C.
26 Broadway, 17th Floor
New York, New York 10004
T: (212) 425-3240

BARKAN MEIZLISH, LLP
4200 Regent Street, Ste. 210
Columbus, OH 43219
T: (614) 221-4221

*Counsel for Defendant International Longshoremen's Association*

1003-509
116836

**TABLE OF CONTENTS**

Page

ARGUMENT ................................................................................................................................. 2

    A.    The LPA Pilots' Acquiescence To A Request To Cease Doing
Business With The Shipping Lines Is Not A Hot-Cargo Agreement ................................. 2

    B.    The Self-Employed LPA Pilots Are Not "Individuals Employed
By Any Person" Within The Meaning of Section 8(b)(4)(i) .............................................. 4

    C.    Plaintiff Now Argues In Its Brief That The LPA Pilots Were Coerced
By Local 1982's Pickets to Enter into the Alleged
Hot-cargo Agreement, But Such an Allegation Is Nowhere in the SAC ............................ 6

    D.    Plaintiff Fails To Allege The Defendants Engaged In The Specific
Coercive Conduct That Is Prohibited By Section 8(b)(4)(ii)(B) ...................................... 10

CONCLUSION ............................................................................................................................ 11

1003-509
116836

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Allied Mech. Servs., Inc. v. Loc. 337 of United Ass'n of Journeymen.*,
   221 F.3d 1333 (6th Cir. 2000) ............................................................................... 5

*Alpert v. Local Union 379, Bhd. of Teamsters,*
   184 F. Supp. 558 (D. Mass. 1960) ........................................................................ 6

*Bates v. Green Farms Condo. Ass'n*,
   958 F.3d 470 (6th Cir. 2020) ................................................................................. 8

*Becker Elec. Co. v. Int'l Bhd. of Elec. Workers, Loc. Union No. 212*,
   927 F.2d 895 (6th Cir. 1991) ................................................................................. 4

*Betal Env't Corp. v. Loc. Union No. 78,*
   *Asbestos & Hazardous Waste Laborers*,
   123 F. Supp. 2d 156 (S.D.N.Y. 2000) ................................................................... 7

*Brannen v. United States*, No. 4:11–CV–0135–HLM, 2011 WL 8245026
   (N.D. Ga. 2011) ..................................................................................................... 8

*Car Carriers, Inc. v. Ford Motor Co.*,
   745 F.2d 1101 (7th Cir. 1984) ............................................................................... 8

*Compass Const. v. Indiana/Kentucky/Ohio Reg'l*
   *Council of Carpenters,* 890 F. Supp. 2d 836 (S.D. Ohio 2012) ......................... 8, 10

*District Council of N.Y., United Bhd. of Carpenters*,
   326 N.L.R.B. 321 (1998) ....................................................................................... 3

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg.*
   *& Const. Trades Council*,
   485 U.S. 568 (1988) .............................................................................................. 8

*General Longshore Workers, ILA,* 235 N.L.R.B. 161 (1978) ....................................... 6

*General Teamsters Local 982*, 181 N.L.R.B. 515 (1970) ............................................. 3

*Gilmour v. Gates, McDonald & Co.*,
   382 F.3d 1312 (11th Cir. 2004) ............................................................................. 8

1003-509
116836

*Lithographers (Lithographers & Printers Nat'l Ass'n)*,
   137 N.L.R.B. 1663 (1962) .................................................................................. 3

*Local 17 (Graphic Arts Emplr's Ass'n)*,
   130 N.L.R.B. 985 (1961) .................................................................................... 3

*Local 1976, United Bhd. of Carpenters v. NLRB*
   357 U.S. 93 (1958) .............................................................................................. 1

*Local 282, Teamsters*, 262 N.L.R.B. 528 (1982) ........................................................ 2

*Local No. 505, Int'l Brotherhood of Teamsters
   (Carolina Lumber Co.)*, 130 N.L.R.B. 1438 (1961) ...................................... 6

*Morgan Distrib. Co. v. Unidynamic Corp.*,
868 F.2d 992 (8th Cir. 1989) .................................................................................... 8

*NLRB v. Fruit Packers,* 377 U.S. 58 (1964) .................................................................. 8

*NLRB v. Local 294, Int'l Bhd. of Teamsters*,
   298 F.2d 105 (2d Cir. 1961) ............................................................................ 2, 5

*NLRB v. Muskegon Bricklayers Union No. 5,*
   378 F.2d 859 (6th Cir. 1967) ........................................................................... 4

*NLRB* v. *Servette, Inc.*, 377 U.S. 46 (1964) ................................................... 2, 4, 5, 10

*Rochester Reg. Joint Board, Local 14A,*
   363 N.L.R.B. No. 179 (2016) ............................................................................ 3

*Teamsters Local 728 (Brown Transport Corp.)*, 140 N.L.R.B. 1436 (1963) ............... 3

*Upholsters Local 61 (Minneapolis House Furnishing Co.)*,
   132 N.L.R.B. 40 (1961) ...................................................................................... 6

**Statutes**

29 U.S.C. § 158(b)(4) ............................................................................................................. 1
29 U.S.C. § 158(b)(4)(A) ............................................................................................... 2, 3, 5, 7
29 U.S.C. § 158(b)(4)(B) ......................................................................................................... 2
29 U.S.C. § 158(b)(4)(i)(B) ..................................................................................................... 5
29 U.S.C. § 158(b)(4)(ii) ...................................................................................................... 5, 8
29 U.S.C. § 158(b)(4)(ii)(A) ........................................................................................... 1, 6, 7, 9
29 U.S.C. § 158(b)(4)(ii)(B) .............................................................................................. 1, 10
29 U.S.C. § 158(e) ........................................................................................................... *passim*
29 U.S.C. § 8(b)(4)(i) ..................................................................................................... 4, 5, 6

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 12

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MIDWEST TERMINALS OF TOLEDO INTERNATIONAL, INC., <br><br> Plaintiff, <br> v. <br><br> INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, *et al.*, <br><br> Defendants | Case No.: 3:18-cv-02560-JJH |

**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION'S
REPLY BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS**

Plaintiff's opposition brief tries to distract the Court from the deficiencies in the allegations in the Second Amended Complaint ("SAC"). But Plaintiff cannot avoid the fact that it has not alleged that the Defendants engaged in the "specific union conduct" prohibited by Section 8(b)(4) of the Labor Management Relations Act ("LMRA"). *See*, *e.g.*, *Local 1976*, *United Bhd. of Carpenters & Joiners v. NLRB*, 357 U.S. 93, 98 (1958).

When stripped to its core, Plaintiff's lawsuit is an attempt to allege that Local 1982 violated the LMRA because the LPA Pilots ceased doing business with the international ships. However, in order to hold **the Defendants** liable for the LPA Pilots' decision, Plaintiff must show that Local 1982 violated either Section 8(b)(4)(ii)(A) or Section 8(b)(4)(ii)(B) of the LMRA; neither of which prohibits a labor union from asking self-employed individuals to cease doing business with another person. The law is settled that "a union can lawfully appeal to secondary employers to exercise their managerial discretion not to do business with a primary person, so long as such request is not

1003-509
116836

accompanied by threats or coercion." *Local 282, Teamsters*, 262 N.L.R.B. 528, 547-48 (1982) (citing *NLRB* v. *Servette, Inc.*, 377 U.S. 46 (1964)); *see NLRB v. Local 294, Int'l Bhd. of Teamsters*, 298 F.2d 105, 108 (2d Cir. 1961) ("[I]nducements and encouragements addressed to management will not suffice to establish an unfair labor practice in the area of secondary boycotts; threats, coercion or restraints are necessary."). Very simply, there are no allegations in the SAC that Local 1982 threatened, coerced, or restrained either the LPA Pilots or the shipping lines. The SAC alleges a purely voluntary agreement between Local 1982 and the LPA Pilots where the union's "fake," "so-called," "signal picketing" acted as an "excuse" for the Pilots to cease doing business with the shipping lines. *See*, *e.g.*, ECF No. 64, Second Am. Compl., ¶¶ 65, 66, 74, 96, 99, 116.

In its opposition brief, Plaintiff tries repeatedly to shoehorn its facts to fit under either Section 8(b)(4)(A) or 8(b)(4)(B) of the LMRA. But Plaintiff's allegations fall far short of stating a violation of either section. Therefore, this Court should grant the ILA's motion to dismiss.

## ARGUMENT

### A. The LPA Pilots' Acquiescence To A Request To Cease Doing Business With The Shipping Lines Is Not A Hot-Cargo Agreement

Rather than addressing the ILA's arguments, Plaintiff elects to argue against a straw man. Despite what Plaintiff says in its opposition, the ILA has never argued that Sections 8(e) or 8(b)(4)(A) of the LMRA do not apply to the LPA Pilots because they are self-employed independent contractors. Instead, the ILA cited numerous cases to show that the LMRA's hot-cargo proscription does not apply to the LPA Pilots' decision to honor Local 1982 "fake" pickets. Section 8(e) was enacted by Congress specifically to close a "loophole" in the LMRA's secondary boycott provisions by prohibiting so-called "hot-cargo" clauses in contracts entered into by **unions** and **their employers** during collective bargaining. *See Nat'l Woodwork Mfrs. Ass'n. v. NLRB*,

1003-509
116836

2

386 U.S. 612, 634–35 (1967). As recognized in *National Woodwork*, the leading Supreme Court case on this issue, Congress defined a "hot-cargo" agreement as: **"[A]n agreement between a union and a unionized employer** that his employees shall not be required to work on or handle 'hot goods' or 'hot cargo' being manufactured or transferred by another employer with whom the union has a labor dispute or whom the union considers and labels as being unfair to organized labor." *Id.* at 634. Plaintiff does not, and cannot, dispute that it has failed to allege such an agreement existing between Local 1982 and the LPA Pilots.

Plaintiff also argues that an "implied" hot-cargo agreement does not require a written contract. But this argument misses the point: whether the agreement is expressed or implied, Section 8(e) does not prohibit Local 1982 from asking the unaffiliated independent contractor lake pilots to stop working for the shipping lines.[1] *See* ECF No. 75-1, at pp. 7-10. The Sixth Circuit has long resolved any ambiguity on this question, holding in *NLRB. v. Loc. 11, United Bhd. of Carpenters* that "there is nothing in [the secondary boycott provisions] of the Act which makes it an unfair labor practice for a union to appeal directly to an employer to induce him to cease doing business with another employer." 242 F.2d 932, 935 (6th Cir. 1957); *see also Nat'l Woodwork Mfrs. Ass'n.*, 386 U.S. at 635 (Section 8(e) "did not expand the type of conduct which § 8(b)(4)(A) condemned.").

---

[1] Moreover, Plaintiff's argument dramatically oversimplifies the meaning of the term "implied" under Section 8(e). The NLRB has time and time again found that "implied" hot-cargo agreements refer to clauses in agreements between a union and its employer that appear neutral on their face but actually have a secondary object in their effect or application. *See Teamsters Local 413 (Patton Warehouse Inc.)*, 140 N.L.R.B. 1474 (1963); *Local 17 (Graphic Arts Emplr's Ass'n)*, 130 N.L.R.B. 985, 988-89 (1961); *Teamsters Local 728 (Brown Transport Corp.*), 140 N.L.R.B. 1436, 1438-39 (1963); *General Teamsters Local 982*, 181 N.L.R.B. 515 (1970); *Rochester Reg. Joint Board, Local 14A,* 363 N.L.R.B. No. 179 (2016); *District Council of N.Y., United Bhd. of Carpenters*, 326 N.L.R.B. 321 (1998); *Lithographers (Lithographers & Printers Nat'l Ass'n)*, 137 N.L.R.B. 1663, 1665 (1962).

Section 8(e) does not prohibit the LPA Pilots from agreeing to honor Local 1982's fake picket line by ceasing doing business with the shipping lines.  Acquiescing to such a request is not the type of agreement that Section 8(e)'s proscription against hot-cargo agreements was designed to make illegal.  *See Loc. 11, United Bhd. of Carpenters & Joiners*, 242 F.2d at 935-36 (finding that, where a subcontractor "has agreed in advance" with his employees to not use certain products, the subcontractor's subsequent acquiescence in "honor[ing] his agreement" to cease using the products of a neutral employer was not a hot-cargo clause); *see also NLRB v. Muskegon Bricklayers Union No. 5,* 378 F.2d 859, 860 (6th Cir. 1967) (Section 8(e) agreement at issue involved a clause in collective bargaining agreement between union and its employers); *Becker Elec. Co. v. Int'l Bhd. of Elec. Workers, Loc. Union No. 212*, 927 F.2d 895, 898 (6th Cir. 1991) (same).

**B.    The Self-Employed LPA Pilots Are Not "Individuals Employed By Any Person" Within The Meaning of Section 8(b)(4)(i)**

Plaintiff alleges in the SAC that the LPA Pilots are "self-employed independent contractors who run their own independent businesses as individual Pilots."  ECF No. 64, ¶ 53.  Plaintiff also concedes in the SAC that the LPA Pilots are not "employees" as defined by the LMRA.  *Id.* at ¶ 54.  Accepting these allegations as true, it is clear that the "self-employed" LPA Pilots are not individuals employed by any person, as required for a violation of LMRA Section 8(b)(4)(i).

Plaintiff points out in its opposition brief that § 8(b)(4)(i) is not limited to "employees" as defined by the LMRA but extends to "individuals employed by any person."  This, however, is a distinction without a difference when it comes to Plaintiff's allegations.  Plaintiff does not allege in the SAC, nor does it argue in its opposition brief, that the LPA Pilots are employed by anyone.  Moreover, as the Supreme Court made clear in *Servette*, a case relied on by Plaintiff, the term

1003-509
116836

4

"individuals employed by any person" under § 8(b)(4)(i) does not apply to appeals for individuals to exercise their managerial discretion. 377 U.S. 46, 54 (1964); *see also Allied Mech. Servs., Inc. v. Loc. 337 of United Ass'n of Journeymen.,* 221 F.3d 1333, *5 (6th Cir. 2000) (Section 8(b)(4)(i) does not apply to individuals exercising discretion). Plaintiff does not, and cannot, argue that the LPA Pilots were not exercising their managerial discretion by unilaterally refusing to pilot international ships at the Port. Indeed, nowhere in *Servette* does the Supreme Court ever mention independent contractors or self-employed people who run their own businesses like the LPA Pilots. The Court instead held that, notwithstanding any amendments to the Act that changed the word "employee" to "individual employed," such changes "did not expand the type of conduct which § 8(b)(4)(A) condemned, that is, union pressures calculated to induce the employees of a secondary employer to withhold their services in order to force their employer to cease dealing with the primary employer." 377 U.S. at 52-53.

Plaintiff then cites *Local 294, Int'l Bhd. of Teamsters* to argue that independent contractors may be "individuals employed by any person." 298 F.2d at 107. But this case also never mentions independent contractors. Instead, *Local 294, Int'l Bhd. of Teamsters* holds that the term "individuals employed by any person" under § 8(b)(4)(i) applies to rank-and-file workers and "low level" and "minor" supervisors. 298 F.2d at 107-08. As the court observed:

> It would go far beyond the purpose of the amendatory legislation, as disclosed in the legislative history, if we were to hold that 'any individual employed by' included corporate officers, high-ranking supervisors and others 'high up the management ladder.' The Board wisely held inducements and encouragements in the nature of a secondary boycott addressed to those in management far above the rank-and-file workers not to constitute violations of Section 8(b)(4)(i)(B). Moreover, the present statutory scheme clearly intends employers to be the principal ones encompassed by Section 8(b)(4)(ii) relative to threats,

1003-509
116836

5

> coercion or restraints addressed to 'any person engaged in commerce or in an industry affecting commerce.' In other words, inducements and encouragements addressed to management will not suffice to establish an unfair labor practice in the area of secondary boycotts; threats, coercion or restraints are necessary.

*Id.*; *see also Alpert v. Local Union 379, Bhd. of Teamsters,* 184 F. Supp. 558, 561 (D. Mass. 1960) (the term "individuals employed by any person" applies only to rank-and-file employees "who perform services manually or clerically, or who manually use goods, or who have minor supervisory functions." ); *Upholsters Local 61 (Minneapolis House Furnishing Co.)*, 132 N.L.R.B. 40, 42 (1961) (Section 8(b)(4)(i) concerns only rank-and-file employees and those low level supervisors whose functions are more or less identical to the rank-and-file); *Local No. 505, Int'l Bhd. of Teamsters, etc. (Carolina Lumber Co.)*, 130 N.L.R.B. 1438, 1443 (1961) (same). Plaintiff does not point to any support for a contention that the "self-employed" independent contractor LPA Pilots, "who run their own businesses," are the rank-and-file employees or minor supervisors falling within the scope of concern of § 8(b)(4)(i). In fact, far from being "low level," the pilots work for themselves and are responsible for piloting large freight ships into port.

Plaintiff, by its own allegations, makes abundantly clear that the LPA Pilots are not "individuals employed by any person" within the meaning of § 8(b)(4)(i). To the contrary, they are their own bosses, "self-employed" business owners, falling outside the scope of § 8(b)(4)(i).

C.  **Plaintiff Now Argues In Its Brief That The LPA Pilots Were Coerced By Local 1982's Pickets to Enter into the Alleged Hot-cargo Agreement, But Such an Allegation Is Nowhere in the SAC**

As the ILA explained in its initial brief, a hot-cargo agreement under Section 8(e) that is voluntary does not violate Section 8(b)(4)(ii)(A) of the LMRA. 29 U.S.C. § 158(b)(4)(ii)(A); *see also Gen'l Longshore Workers, ILA,* 235 N.L.R.B. 161, 169 (1978) ("Unlike Section 8(e) which

prohibits *voluntary* agreements, Section 8(b)(4)(ii)(A) requires independent proof that the employer party was restrained and coerced."). Rather, Local 1982 only violates § 8(b)(4)(ii)(A) if it **forced or coerced** the LPA Pilots to enter into the hot-cargo agreement prohibited by Section 8(e). *See Betal Env't Corp. v. Loc. Union No. 78, Asbestos Laborers*, 123 F. Supp. 2d 156, 158–59 (S.D.N.Y. 2000) (dismissing § 8(b)(4)(A) claim where "there are no allegations that defendants tried to force or require plaintiff to enter into" any hot-cargo clause in the collective bargaining agreement).

Here, Plaintiff alleges Local 1982 and the LPA Pilots entered into an agreement prohibited by Section 8(e) where: "the LPA and the Independent Contractor Pilots would stop working for the International Shipping Companies upon a signal picket from the ILA." ECF No. 64, ¶ 142. But nowhere in the SAC does Plaintiff allege that Local 1982's picketing coerced the LPA Pilots to enter into this purported agreement. On the contrary, in its opening brief, the ILA cited more than 20 paragraphs in the SAC demonstrating the opposite—Plaintiff alleges that the supposed hot-cargo agreement was mutual and voluntary. *See,* ECF No. 75-1, at p. 12. Moreover, it simply cannot be true that the LPA Pilots, having willingly agreed to block the international ships upon a signal picket from the union, were coerced into doing the exact thing that they had already agreed to do.

Nonetheless, in its opposition brief, Plaintiff contends, without support, that the "SAC plainly states, repeatedly, that the Defendants engaged in picketing and water picketing in an attempt to force the Pilots to stop providing shipping services to neutral shipping companies." ECF No. 81, at p. 8. As an initial matter, even if this statement were true (which it is not), this would be insufficient to allege a violation of 8(b)(4)(ii)(A)—Plaintiff must allege that Local 1982's "pickets" forced the LPA Pilots to enter into the purported hot-cargo agreement, not simply that

1003-509
116836

7

the union's "pickets" forced the pilots to cease working with the shipping lines. More importantly, however, Plaintiff does not cite to a single paragraph in the SAC to support this statement.[2] This is because it cannot. Plaintiff alleges repeatedly that the LPA Pilots willingly and voluntarily agreed to cease doing business with the shipping lines. Indeed, Plaintiff is emphatic that the union's "so-called," "fake" "picketing" was merely a "coordinated" set-up to give the LPA Pilots an "excuse" to block the shipping companies from navigating in and out of the Port. *See*, *e.g.*, ECF No. 64, ¶¶ 66, 68, 99, 117.

Plaintiff now argues that, despite what it alleges in its SAC, the mere fact that Plaintiff uses the word "picketing" is enough to survive a motion to dismiss. *See* ECF No. 81, at p. 8. However, Plaintiff cannot just call something "picketing" to make Local 1982's alleged conduct coercive within the meaning of Section 8(b)(4)(ii). *See Compass Const. v. Ind./Ken./Ohio Reg'l Council of Carpenters,* 890 F. Supp. 2d 836, 841-43 (S.D. Ohio 2012) (picketing is a term of art in labor law that requires specific acts of coercion that amount to more than "mere persuasion," such as conduct "promot[ing] physical confrontation"). As the Supreme Court held in *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, not all picketing is prohibited under § 8(b)(4)(ii) as Congress did not intend the phrase "restrain or coerce" to reach "peaceful picketing." 485 U.S. 568, n. 5 (1988); *see also NLRB v. Fruit Packers,* 377 U.S. 58, 63 (1964) ("We . . have not ascribed

---

[2] Plaintiff never alleges in the SAC that Local 1982 coerced the Pilots to enter into the agreement alleged to be unlawful under Section 8(e). Plaintiff cannot now amend its pleading by adding allegations of coercion to its brief in opposition to the ILA's motion to dismiss. In the Sixth Circuit it is well-established that new averments in a brief cannot cure a complaint's shortcomings. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 484 (6th Cir. 2020); *see also Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312, 1315 (11th Cir. 2004) (a plaintiff cannot amend a complaint through a brief); *Brannen v. United States*, No. 4:11–CV–0135–HLM, 2011 WL 8245026, at *5 (N.D. Ga. 2011) ("Plaintiffs cannot amend their Complaint through their brief in response to the motion to dismiss."). As the Seventh and Eighth Circuits have explained, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

to Congress a purpose to outlaw peaceful picketing unless 'there is the clearest indication in the legislative history . . . [and] [b]oth the congressional policy and our adherence to this principle of interpretation **reflect concern that a broad ban against peaceful picketing might collide with the guarantees of the First Amendment**.").

In its SAC, Plaintiff could not be clearer that the union's labor activity was not real picketing; indeed, it was fake picketing. Over and over Plaintiff calls the picketing "so-called," ECF No. 64 at ¶¶ 56, 99, 116, an "excuse," *id.* at ¶¶ 65, 96, 99, 116, 117, 127, "fake," *id.* at ¶ 66, placing quotation marks around the word "picket" eleven times, *id.* at ¶¶ 65-68, 91, 92, 95, 96, 99, 100, 105, and alleges that Local 1982 and the LPA Pilots "coordinated" together six times, *id.* at ¶¶ 49, 58, 68, 73, 75, 137. Obviously, Plaintiff does not allege that this fake "picketing" that was allegedly coordinated with the LPA Pilots was in anyway real, coercive picketing within the meaning of 8(b)(4)(ii)(A) or (B). The Plaintiff's own words should be taken for what they are: "**the so-called picket was the excuse even though nobody at Midwest, including the ILA members, recognized the picket as legitimate.**" *Id.* at ¶ 116.

In sum, Plaintiff cannot have it both ways. It cannot be that Local 1982 and the LPA Pilots had a plan where the LPA Pilots would block the shipping lines upon a signal picket from Local 1982 and also that these "fake" "so-called" "pickets" coerced the LPA Pilots. To the contrary, Plaintiff is purposeful that this purported agreement was a mutual "coordinated action" between Local 1982 and the LPA Pilots, of which the law is clear that such a voluntary hot-cargo agreement does not violate Section 8(b)(4)(ii)(A).

## D. Plaintiff Fails To Allege The Defendants Engaged In The Specific Coercive Conduct That Is Prohibited By Section 8(b)(4)(ii)(B)

Plaintiff alleges that Defendants violated Section 8(b)(4)(ii)(B) of the LMRA by threatening or coercing the international shipping lines to cease doing business with Midwest. A colorable claim under Section 8(b)(4)(ii)(B) requires a showing **both** that the union engages in prohibited coercive conduct **and** that the union has a particular proscribed secondary purpose. *E.g. Compass Const.*, 890 F. Supp. 2d at 841. In its opposition brief, Plaintiff focuses its entire argument in support of its Section 8(b)(4)(ii)(B) claim on the Defendants' allegedly secondary purpose. However, Plaintiff completely ignores any discussion of whether Defendants engaged in the requisite prohibited threatening or coercive conduct towards the shipping lines.

Plaintiff's reference to William Yockey's statements at an April 27, 2017 Port Authority meeting merely supports Plaintiff's allegation that Local 1982 had a secondary objective to cause the shipping lines to cease doing business with Midwest. As Plaintiff argues, Yockey's statements go towards the union's "intent" and establishing the union's "object or purpose." *See* ECF No. 81, at pp. 9-10. However, the ILA did not argue that Plaintiff has not alleged Local 1982's secondary purpose in its motion to dismiss. Rather, in its initial brief, the ILA argued that Plaintiff failed to allege that Local 1982 engaged in prohibited threatening or coercive conduct. And these statements do nothing to establish that Local 1982 actually engaged in the coercive conduct proscribed under Section 8(b)(4)(ii)(B). As explained in detail above, Plaintiff alleges that Local 1982's "so-called" "fake" "picketing" was only a "signal" for the LPA Pilots to stop navigating the shipping lines. Again, it was lawful for Local 1982 to appeal to the LPA Pilots to cease doing business with the international ships. *See Servette, Inc.*, 377 U.S. at 51 (a union can lawfully solicit an employer or self-employed person to cease doing business with another person); *cf. Nat'l*

*Woodwork Mfrs. Ass'n,* 386 U.S. at 640 ("Before we may say that Congress meant to strike from workers' hands the economic weapons traditionally used against their employers' efforts to abolish their jobs, that meaning should plainly appear.").

Plaintiff never alleges that Defendants threatened, coerced, or restrained the international shipping companies. Rather, Plaintiff merely alleges that Local 1982's "fake" picketing of Plaintiff prompted the LPA Pilots to honor the fake picket line: "[The Local's] action was a signal to the Pilots to turn their ships around and not dock at Midwest's facility or to refuse to move the ships from Midwest's facility." ECF No. 64, ¶ 104. It was the refusal by the LPA Pilots to navigate the international ships that prevented Plaintiffs' customers from docking at the terminal, and the SAC is devoid of any allegations that Defendants threatened or coerced Plaintiff's customers directly. Nor has Plaintiff provided any legal basis for holding Defendants vicariously liable for the actions of the LPA Pilots. If Plaintiff wanted to recover damages for any losses caused by the LPA Pilot's refusal to work for the international shipping lines, it should not have voluntarily dismissed its lawsuit against the LPA Pilots back in 2018.

## CONCLUSION

For the reasons provided above and in the ILA's original brief, this Court must dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6) for a failure to state a claim.

Dated: May 19, 2021

                                               Respectfully submitted,

                                               /s/ John P. Sheridan
                                               John P. Sheridan, Esq.
                                               Daniel Wolff, Esq.
                                               MARRINAN, MAZZOLA & MARDON, P.C.
                                               26 Broadway, 17th Floor

1003-509
116836

11

        New York, New York 10004
        T: (212) 425-3240
        jsheridan@mmmpc.com
        dwolff@mmmpc.com

*Pro Hac Vice Counsel for Defendant International Longshoremen's Association*

/s/ D. James Petroff
D. James Petroff (Ohio 0042476)
Jonathan C. Wentz
BARKAN MEIZLISH, LLP
4200 Regent Street, Ste. 210
Columbus, OH 43219
T: (614) 221-4221
Email: jpetroff@barkanmeizlish.com
       jwentz@barkanmeizlish.com

*Local Counsel for Defendant International Longshoremen's Association*

1003-509
116836

## CERTIFICATE OF COMPLIANCE AND TRACK

I hereby certify that this case has been assigned to the complex track and that Defendant International Longshoremen's Association's reply brief in support of its motion to dismiss the Second Amended Complaint adheres to the page limitations set forth for complex cases in Rule 7.1(f) of the Local Rules of Civil Procedure for United States District Court for the Northern District of Ohio.

Date: May 19, 2021

/s/ Daniel Wolff
Daniel Wolff